# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

JOHNATHAN B. STEEN,   )
           )
    Petitioner,   )
           )
 vs.        )  Case No. 12-0349-CV-W-BP-P
           )
MICHAEL BOWERSOX,   )
           )
    Respondent.  )

## OPINION AND ORDER DENYING PETITION FOR HABEAS CORPUS
## AND DENYING THE ISSUANCE OF A CERTIFICATE OF APPEALABILITY

Petitioner, Johnathan B. Steen, filed this pro se habeas corpus petition pursuant to 28 U.S.C. § 2254 on March 14, 2012, seeking to challenge his 2006 conviction and sentence for first degree assault, which were entered in the Circuit Court of Clay County, Missouri.

The petition raises three grounds for relief: (1) that the trial court erred in "overruling petitioner's motion for judgment of acquittal...and entering judgment on the verdict of guilty of first degree assault;" (2) that the trial court abused its discretion in "overruling petitioner's objection to the State's witness reading from Exhibit 28;" and (3) that trial counsel was ineffective for failing to request that the jury be instructed on the legal definition of "knowingly." Respondent contends that all grounds are without merit.

## SUMMARY OF THE FACTS

On direct appeal, the Missouri Court of Appeals summarized the facts as follows:

> [Petitioner] and his fiancée, Ms. Jennifer Attebury, took turns watching their sick baby girl, who was only eighteen days old. During [petitioner's] shift, Ms. Attebury remained in the apartment but was in and out the living room [sic] where [petitioner] and the baby were located. Ms. Attebury walked in the living room and noticed that the baby was asleep in [petitioner's] arms at the

computer desk. [Petitioner] laid the baby in her seat, which was on the living room floor, and Ms. Attebury covered the baby with a blanket. Both of them went to sleep around 11:30 in the morning. Ms. Attebury woke up and checked on the baby three hours later when she noticed that the baby had not made a sound. The baby's head was extremely swollen and red. She awakened [petitioner], and he told her that he did not know what happened to the baby. They took the baby to the hospital and told the staff that they did not know what happened to the baby, specifically denying that the baby had fallen. The doctor suspected child abuse and alerted the authorities.

Both parents were interviewed, but only [petitioner] was arrested and charged with first-degree assault after confessing to injuring the baby. Initially, he stated that he hit the baby's head on the exposed wooden knob on a rocking chair when he plopped down in the chair. After further investigation, he told the officers:

> he was getting frustrated that [the baby] was still crying, and he was tired. He then began rocking with her in the chair again, rocking in what he described as a very aggressive manner, and thought it was possible that her head had hit the exposed wooden end of the chair, again while he was doing this. He said he rocked so hard at one point that he almost fell forward out of the chair. . . . He said he was sorry for what he had done.

In a handwritten statement, [petitioner] stated that he did not mean to hurt the baby in any way and was sorry that he had. During his incarceration, [petitioner] wrote letters to Ms. Attebury expressing his remorse for accidentally hurting their baby.

At [petitioner's] jury trial, the treating physician, Dr. Mary Hegenbarth, testified that the baby's head was bruised and swollen, and her skull suffered wide fractures. She also noticed a bruise inside of the baby's lip, which was commonly associated with jamming a bottle into an infant's mouth. Dr. Hegernbarth [sic] also testified to bleeding on and within the brain and swelling of the head. She concluded that the injury was non-accidental. A radiologist, Dr. Charlotte Moore, testified to the severity of the injuries. Dr. Michael Moran, a pediatrician at the Child At Risk Evaluation Clinic (CARE), and Dr. Clarence Green, a child neurosurgeon, testified that the injuries were caused by blunt force trauma and opined that such force had to be non-accidental. Dr. Green testified that common accidents

that could cause the type of injuries the baby received were rolling off a two-story balcony or a television falling off a pedestal onto the baby's head.

[Petitioner] testified in his own defense that the baby's injuries were accidentally caused. He stated that he hit the baby's head on the wooden handle of the rocking chair when he plopped down in the chair to feed her around 9:10 in the morning. Around 1:00 in the afternoon, he woke up to use the bathroom while Ms. Attebury was still sleeping and heard the baby crying. He claims that he removed the crying baby from her seat and fed her on the couch while covered with blankets, and she went back to sleep. As he rose and stepped away from the couch with the baby in his arms, he stated that he tripped in the blankets, fell, and landed on the baby's head. He explained that he denied and lied about the baby falling to the hospital staff because he was afraid of being seen as a bad parent. He admitted that the first time that he told anyone about tripping in the blankets was after he obtained an attorney, despite pleas from authorities asking him to tell the truth to help the baby. He claimed that he withheld the story about falling on the child even from Ms. Attebury because he was too embarrassed and ashamed to tell others that he fell on his child. The defense did not present any other testimony.

The jury convicted [petitioner] of first-degree assault, section 565.050, and assessed punishment at twenty years of imprisonment. [Petitioner] filed a motion for a new trial, which was denied. He was sentenced to a twenty-two year term.

(Respondent's Exhibit E, pp. 1-4).

Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record. Marshall v. Lonberger, 459 U.S. 422, 432 (1983). Credibility determinations are left for the state court to decide. Graham v. Solem, 728 F.2d 1533, 1540 (8th Cir. en banc 1984). It is petitioner's burden to establish by clear and convincing evidence that the state court findings are erroneous. 28 U.S.C. § 2254 (e)(1).[1] Because

_____

[1]"In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State

the state court's findings of fact have fair support in the record and because petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

## GROUND 1

In ground 1, petitioner contends that the trial court erred in "overruling petitioner's motion for judgment of acquittal...and entering judgment on the verdict of guilty of first degree assault" because the evidence was insufficient to establish beyond a reasonable doubt that he knowingly caused injuries to his baby. Review of this claim is extremely deferential to the state courts. Constitutionally sufficient evidence exists to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).

On direct appeal, the Missouri Court of Appeals disposed of this claim as follows:

> In his first point, [petitioner] argues that the trial court erred in overruling his motion for judgment of acquittal at the close of all the evidence and in entering judgment on the verdict of guilty of first-degree assault because the evidence was insufficient to establish beyond a reasonable doubt that he knowingly caused injuries to his baby. He claims testimony that he accidentally injured the baby was the only evidence of his mental state, so the jury speculated rather than inferred that he knew his actions were practically certain to cause serious physical injury.

> Appellate review of a sufficiency of the evidence claim is limited to a determination of whether there is sufficient evidence from which a reasonable juror could have found the defendant guilty beyond a reasonable doubt. *See State v. Polson*, 145 S.W.3d 881, 887 (Mo. App. W.D. 2004). This court does not substitute its judgment for that of the juror but defers to the jury's decision. *See id.* We review the

court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

-4-

evidence in the light most favorable to the verdict, including all reasonable inferences and disregarding all inferences to the contrary. *Id.* To find [petitioner] guilty of committing first-degree assault, the jury had to believe that [petitioner] knowingly caused serious physical injury to the baby by causing blunt force trauma to the baby's head. *See* § 565.050. Intent can be proven with circumstantial evidence including the defendant's conduct before the act, the act itself, and the defendant's subsequent conduct, and the accompanying inferences. *Id.* at 888.

[Petitioner's] theory was that he caused the injuries but it was an accident. Evidence of the seriousness of the victim's injuries supports an inference that the defendant acted with the purpose to cause serious physical injury to the victim. *State v. Candela*, 929 S.W.2d 852, 868 (Mo. App. E.D. 1996). "A jury can infer intent to cause physical bodily harm when 'under the circumstances, the prohibited result may reasonably be expected to follow from a voluntary act, irrespective of any subjective desire on the part of the offender to have accomplished the prohibited result.'" *Id.* (internal quotation marks and citation omitted). The doctors testified that the injuries were not accidental because of their severity. None of the doctors testified that the injuries could have been accidentally caused in the manner described by [petitioner]. One of the doctors specifically rejected [petitioner's] falling on the baby as the cause of the injuries because it was inconsistent with the injury. The jury could have disbelieved that he accidentally caused them in light of this testimony. Additionally, [petitioner's] admission that he caused the injuries and his conflicting statements about what happened indicated his guilt. *Id.* Thus, there was sufficient evidence, when viewed in the light most favorable to the verdict, from which a reasonable juror could have found that [petitioner] committed first-degree assault. [Petitioner's] first point is denied.

(Respondent's Exhibit E, pp. 4-5).

The resolution of ground 1 by the state court did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2) (as amended April 24, 1996), as defined by the Supreme Court in <u>Williams v.</u>

Case 4:12-cv-00349-BP   Document 15   Filed 07/13/12   Page 5 of 13

Taylor, 529 U.S. 362, 412 (2000).[2]

Ground 1 is denied.

## **GROUND 2**

In ground 2, petitioner contends that the trial court abused its discretion in "overruling petitioner's objection to the State's witness reading from Exhibit 28."

On direct appeal, the Missouri Court of Appeals disposed of petitioner's claim as follows:

> In his second point, petitioner argues that the trial court erred in overruling his objection to Ms. Attebury reading a letter to the jury that he wrote, in which he discussed with Ms. Attebury his trial strategy to counter the State's argument that his fall on the baby could not have caused the injuries. He claims that the admission of it was prejudicial and did not advance the State's case but "made it seem to the jury that [petitioner] was seeking a doctor to testify falsely." A trial court is granted broad discretion in admitting evidence. *State v. Huse*, 842 S.W.2d 579, 583 (Mo. App. S.D. 1992). An admission is erroneous if it is an abuse of that discretion. *See id.* Abuse of discretion occurs when the ruling is clearly against the logic of circumstances then before the court and is so unreasonable and arbitrary that the ruling shocks this court's sense of justice and indicates a lack of careful consideration on the part of the trial court. *State v. Cofield*, 95 S.W.3d 202, 205 (Mo. App. S.D. 2003). Upon finding error, we will only reverse if [petitioner] was prejudiced by the erroneous admission. *Id.*
>
> At trial, Ms. Attebury read two letters to the jury that [petitioner] wrote to her during his pre-trial incarceration. She read statements from both letters expressing [petitioner's] remorse for accidentally hurting their daughter. Additionally, she read the following

---

[2]According to the concurrence of Justice O'Connor, joined by four other members of the Court, "under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413, 120 S.Ct. at 1523.

statements from one of the letters:

> Cassie got that letter from me yet? Talk to her, tell her to get a second opinion on those injuries. I need a doctor that will say that those injuries could have in fact came from a fall where I landed on her. It's important because that will assist me on proving those doctors are incompetent. Try Dr. Heineman. I'll also need the doctor to testify to that in court, so she or he will have to talk to my attorney, but I'll have to know the name of the doctor and the number so I can give the information to her.

[Petitioner] objected at trial to the admission of the letter as being highly prejudicial, particularly to this portion. The trial court maintained its ruling from the earlier motion in limine hearing that the letter's probative value outweighed its prejudicial effect on [petitioner].

[Petitioner] argues that the ruling was an abuse of discretion because such evidence suggested that [petitioner] sought to present false evidence from a doctor, thereby deceiving the trial court and the jury. [Petitioner] claims that the evidence was prejudicial since the State's theory was [petitioner's] conduct could only constitute a knowing assault. Further, it was prejudicial because it amounted to showing [petitioner's] bad character, other crimes, and trial strategy. The State claims the trial court did not abuse its discretion because the evidence manifested [petitioner's] "consciousness of guilt and desire to conceal the offense" since [petitioner] was trying to obtain an expert witness who "would contradict the testimony of the State's expert witness."

Evidence is admissible when it is both legally and logically relevant. *State v. Miller*, 220 S.W.3d 862, 869 (Mo. App. W.D. 2007). A trial court has discretion to rule on the relevancy of evidence, and such decision will be affirmed absent abuse of its discretion. *Huse*, 842 S.W.2d at 583. Evidence is legally relevant when its probative value outweighs its prejudicial effect. *Miller*, 220 S.W.3d at 869. Logically relevant evidence "'tends to make the existence of a material fact more or less probable.'" *Id.* (citation omitted).

Clearly, the evidence indicates [petitioner's] attempt to develop a defense. Unlike the declarations and conduct found in the cases cited by the State, [petitioner's] statements amounted to a legitimate

-7-

attempt to prepare a defense and not misconduct. Such evidence did not reveal a desire to conceal the evidence of his guilt or an inconsistent demeanor of an innocent person so that it was not evidence of consciousness of guilt. Because it is not logically relevant, it was error to admit this portion of the letter into evidence.

Nevertheless, it was not prejudicial error such that it deprived [petitioner] of a fair trial. *See Miller*, 220 S.W.3d at 866. Prejudicial error is that which if corrected would have changed the outcome of trial. *Id.* Excluding the evidence would not have changed the outcome of the trial. First, [petitioner] did not present any medical expert testimony supporting his defense. So there is no probability that the jury's disbelief of [petitioner's] explanation was based on any determination that medical evidence in his favor was fabricated. Second, the doctors all testified that the injuries were too severe to be the result of an accident. Third, Dr. Green specifically opined that an adult landing on a baby's head could not have caused the injuries unless the adult stood on the child's head. Because no medical evidence indicated that the injuries could have been accidentally caused by [petitioner's] explanations, the trial outcome would not have been different. [Petitioner's] second point is denied.

(Respondent's Exhibit E, pp. 5-8).

The resolution of ground 2 by the state court did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2) (as amended April 24, 1996), as defined by the Supreme Court in <u>Williams</u>, 529 U.S. at 412.

Ground 2 is denied.

### <u>GROUND 3</u>

In ground 3, petitioner contends that trial counsel was ineffective for failing to request that the jury be instructed on the legal definition of "knowingly." In order to succeed on a claim of

ineffective assistance of counsel, petitioner must establish that: (1) his counsel's performance was unreasonable as viewed in the totality of the circumstances; and (2) his defense was prejudiced by counsel's action in that there is a reasonably probability that, but for counsel's unprofessional acts, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 694-95 (1984); Schaeffer v. Black, 774 F.2d 865, 867 (8th Cir. 1985). Reasonably effective assistance of counsel may be defined as the skill and diligence that a reasonably competent attorney would exercise under similar circumstances. See, e.g., Strickland v. Washington, 466 U.S. at 687-90. Judicial scrutiny of counsel's performance must be highly deferential, id. at 689, and there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id.

On appeal from the denial of his Mo. Sup. Ct. Rule 29.15 Motion, the Missouri Court of Appeals disposed of petitioner's claims as follows:

> In his sole point on appeal, [petitioner] argues that his trial counsel was ineffective for failing to request the court to instruct the jury on the legal definition of "knowingly." He contends that reasonably competent counsel would have requested a definition, and if the jury had been instructed on this matter, there is a reasonable likelihood that the outcome of his trial would have been different.
>
> To prevail on a claim of ineffective assistance, the movant must prove that: (1) his trial counsel failed to exercise the skill and diligence that a reasonably competent attorney would exercise under similar circumstances; and (2) trial counsel's failure was prejudicial to his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the first prong, the movant must show that his trial counsel's representation was outside the wide range of professional competence. *Sidebottom v. State*, 781 S.W.2d 791, 795 (Mo. banc 1989). There exists a strong presumption that counsel gave adequate assistance and that all significant decisions were made in exercise of reasonable professional judgment. *Strickland*, 466 U.S. at 690.
>
> To satisfy the second prong, the movant must show but for counsel's

-9-

errors, the result would have been different. *Sidebottom*, 781 S.W.2d at 796. Both the performance and the prejudice prongs must be demonstrated by a preponderance of the evidence. *Id.* If a movant fails to satisfy one prong, the reviewing court does not need to consider the other. *State v. Nunley*, 980 S.W.2d 290, 292 (Mo. banc 1998).

The trial court gave the jury the following instruction, based on MAI-CR3d 319.02, regarding the first-degree assault charge:

> If you find and believe from the evidence beyond a reasonable doubt:
>
>> That, on or about May 21, 2005, in the County of Clay, State of Missouri, the defendant knowingly caused serious physical injury to Ranee Attebury-Steen by causing blunt force trauma to her head,
>
> then you will find the defendant guilty of assault in the first degree.
>
>> However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

Note on Use 6(b) for MAI-CR3d 319.02, the verdict director for first-degree assault, provides that the term "knowingly," "if used in the instruction, may be defined by the Court on its own motion and must be defined upon written request in proper form by the state or by the defendant." Thus, unless requested by either party, an instruction on the definition of "knowingly" is not mandatory.

[Petitioner's] trial counsel, Mona Spencer, did not request an instruction defining the term "knowingly." Nor did the State request such instruction. At the hearing on the post-conviction motion, Spencer testified that she did not request the definitional instruction because "knowingly" is a term of common meaning and usage. She believed there was no need to further explain the term because it has no special meaning in the legal context. As a trial attorney with twenty years experience in the Public Defender's Office, Spencer has

-10-

never requested a definitional instruction on "knowingly" because it is not a term of art or varied meaning.

The motion court concluded that [petitioner] is not entitled to post-conviction relief because he failed to overcome the presumption that trial counsel's decision not to request the definition instruction was reasonable trial strategy. We agree that [petitioner] has not met his burden of showing that trial counsel was ineffective.

The decision to request an optional jury instruction on the definition of the term "knowingly" is a matter of trial strategy. **Manwarren v. State**, 223 S.W.3d 899, 904 (Mo. App. 2007). "An objectively reasonable choice not to submit an available instruction does not constitute ineffective assistance of counsel." **Young v. State**, 761 S.W.2d 725, 727 (Mo. App. 1988). It is reasonable to forego requesting an instruction defining the term "knowingly" when its use in the jury instruction comports with the use of the term in common, everyday language. **Manwarren**, 223 S.W.3d at 904. "The common definition of 'knowingly' is 'in a knowing manner...: with awareness, deliberateness, or intention.'" **State v. Bozarth**, 51 S.W.3d 179, 182 (Mo. App. 2001) (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY UNABRIDGED 1252 (1971)). The "awareness" component of that common definition is highlighted in MAI-CR3d 333.00, which defines "knowingly" as:

> A person knew, or acts knowingly, or with knowledge,
>
> > (a) with respect to his or her conduct or to attendant circumstances when a person (is) (was) aware of the nature of his or her conduct or that those circumstances (exist) (existed), or
> >
> > (b) with respect to a result of a person's conduct when he or she (is) (was) aware that his or her conduct (is) (was) practically certain to cause that result.

Here, trial counsel made a reasoned decision not to request an instruction for the definition of "knowingly," based upon the exercise of her professional judgment and experience as a criminal defense attorney. Because the use of the term "knowingly" in MAI-CR3d

-11-

319.02 is indistinguishable from the common understanding of the term, counsel's decision to forgo requesting such a definition is objectively reasonable trial strategy.

The motion court did not clearly err in denying post-conviction relief because [petitioner] failed to demonstrate that his trial counsel's conduct fell below the standard of reasonably competent counsel. The point on appeal is denied.

(Respondent's Exhibit J, pp. 4-8).

The resolution of ground 3 by the state court did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2) (as amended April 24, 1996), as defined by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 412 (2000). Applying the Strickland standard of review to the facts as set forth in the record, the Court finds that counsel was not ineffective.

Ground 3 is denied.

## CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional right." To satisfy this standard, a petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong." Tennard v. Dretke, 542 U.S. 274, 276 (2004). Because petitioner has not met this standard, a certificate of appealability will be denied. See 28 U.S.C. § 2254, Rule 11(a).

## ORDER

Accordingly, it is **ORDERED** that:

-12-

(1) the above-captioned petition for a writ of habeas corpus is denied;

(2) this case is dismissed with prejudice; and

(3) the issuance of a certificate of appealability is denied.


 /s/ Beth Phillips                                 
BETH PHILLIPS
UNITED STATES DISTRICT JUDGE

Kansas City, Missouri,

Dated: July 13, 2012.